## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WILLIAM D. LAYMAN,**

       **Petitioner,**

**v.**                                   **Case No. 8:05-CV-2208-T-24EAJ**

**FRANCIS J. HARVEY,**
**Secretary of the Army**,

       **Respondent.**
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on **Respondent's Refiled Motion to Dismiss and/or for Summary Judgment** (Dkt. 33), **Petitioner's Cross-Motion for Summary Judgment and Opposition to Respondent's Motion to Dismiss and/or for Summary Judgment** (Dkt. 37) and **Respondent's Opposition to Petitioner's Cross-Motion for Summary Judgment** (Dkt. 43). These matters have been referred by the District Judge for a report and recommendation. Oral argument was held on December 11, 2006.

I.    <u>Background Facts</u>

This case stems from an order issued by the United States Army Reserves ("Army") requiring Petitioner, Captain William Layman ("Layman") to report for active duty on various dates. At the time of oral argument, counsel states that Petitioner's reporting date was April, 2007. However, on December 19, 2006, subsequent to oral argument, Layman filed a preliminary injunction motion stating that the April reporting date had been rescinded and that he now has a

reporting date of January 1, 2007. (Dkt. 47 at 1)[1]

While in college, Layman completed training in the Reserve Officer Training Corps ("ROTC") and incurred a four-year Active Duty Service Obligation ("ADSO").  After serving two years of active duty, Layman entered into a contract with the Army as part of the Armed Forces Health Professions Scholarship Program ("HPSP").  (AR 36)[2]  Pursuant to the contract, Layman received scholarship assistance from the Army in return for six years on extended active duty and four years in the Individual Ready Reserve ("IRR").  (AR 36-39)  Under the terms of the contract, Layman agreed to immediately notify the Office of the Surgeon General ("OSG") of any administrative or medically related problem that he might incur while a participant of the program. (AR 37)

While in dental school, Layman was diagnosed with bipolar disorder, chronic psoriasis and eczema.  In February 2004, Layman requested that he be processed through a medical evaluation board ("MEB") and physical evaluation board ("PEB") procedure prior to the publication of any active duty orders.  (AR 41)  On February 26, 2004, Lieutenant Colonel Norvell V. Coots ("Coots"), a medical officer in the OSG, signed a memorandum stating that Layman was not qualified for active duty or retention in the Army Reserve pursuant to Army Regulation 40-501 ("AR 40-501").  (AR 40)  The memorandum provided that "Layman does not met the medical retention standards of Paragraph 3-32 due to a mood disorder diagnosis with persistent or recurrence of symptoms

---

[1]  By orders dated September 28, 2006, the Army directed Layman to report to Walter Reed Army Hospital on April 10, 2007.  (Dkt. 47 at 8)  On December 18, 2006, Layman received orders to report to active duty on January 1, 2007; his designated duty station is Fort Sam Houston, Texas. (Id.)

[2]  "AR" refers to the administrative records attached to Respondent's dispositive motions.

which would interfere with performance of military duty.  He is therefore not qualified for active duty or retention in the USAR."  (AR 40)

By order dated August 23, 2005, Layman was directed to report to duty to complete his military service.  (AR 31)  The order advised Layman that he would be evaluated by a military physician to determine whether he was fit for military service, and if found unfit, would be processed through the Army Disability Evaluation System. (Id.) Subsequently, the Army rescinded the order to report to duty because of Layman's lack of consent to undergo a medical evaluation. (AR 30)  On November 28, 2005, the Army wrote Layman that he should voluntarily submit to active duty for a medical evaluation or the Army would issue an order requiring Layman to perform 60 months of active duty.  (Dkt. 31, Ex. 18)

On December 21, 2005, Layman submitted his resignation based on his personal hardship and dependency packet.  (AR 02)   Layman asserted that he should be discharged due to extreme compassionate circumstances.   Layman and his wife are the guardians of the minor daughter of Virginia Redlinger ("Redlinger").   Redlinger died from cancer in 2005.   Layman alleged that, because there are no other family members available to care for Redlinger's minor child, he should be discharged from the Army.  (AR 04)  In addition, Layman contended that he is  medically unfit for active duty because he suffers from bi-polar disorder.  (AR 05)

On January 12, 2006, Colonel Debra A. Cook ("Cook"), the Commander of the Human Resources Command in St. Louis,  reviewed and recommended disapproval of Layman's request to resign.  (AR 01)   After a review of Layman's hardship packet, Cook determined that there were other family members able to care for the minor child.  (Id.) As a result, Cook held that Layman's circumstances did not constitute extreme compassionate circumstances warranting discharge.  As

to Layman's request for discharge based upon his medical disability, Cook stated that Layman's medical issues may be processed through Army medical channels rather than through his resignation.  (Id.)  Cook added that if Layman's resignation was approved, she recommended that Layman be directed to repay his educational benefits debt of $64,791.  (Id.)

On May 16, 2006, after reviewing the hardship packet and supplemental pages to the packet, the Assistant Secretary of the Army disapproved Layman's request for resignation.  (AR 00, 02-29) Following the disapproval of Layman's request for resignation, the Army ordered Layman to active duty for a period of six years.  (AR 00)

II.    Procedural History

 On December 2, 2005, Layman filed a writ of habeas corpus alleging that the Army was wrongfully detaining him by denying his resignation request and seeking an order requiring Layman's resignation and honorable discharge.  (Dkt. 1)  Simultaneously, Layman filed a Motion for Temporary Restraining Order and Preliminary Injunction to prevent the Army from enforcing the Army's order to report to active duty.  (Dkts. 4 and 5) After the Army filed a motion to stay the case pending the administrative adjudication of Plaintiff's request for discharge, the court stayed the case. (Dkts. 18, 20)  On May 16, 2006, the Army denied Layman's application for discharge.  (AR 00)

On July 16, 2006, Layman filed his amended writ of habeas corpus.  (Dkt. 31)  In his amended petition, Layman alleges that he is being wrongfully detained in the military as a result of the Army's violation of his constitutional rights as well as violations of statutes and regulations. Layman requests that the court declare null and void any orders requiring him to report for active duty.  (Id. at 18)  In addition, Layman requests an order requiring the Army to discharge him from

4

the Army.  (Id.)

III.    Issues Presented

The Army argues that Layman's petition should be dismissed without prejudice for failure

to exhaust his administrative remedies.  Specifically, the Army argues that, before Layman may seek

judicial review, Layman must appeal to the Army Board for the Correction of Military Records

("ABCMR") regarding his hardship and dependency discharge application.   In reference to

Layman's application for a medical discharge, the Army asserts that, after Layman reports for active

duty, he may seek a medical evaluation through the Army Physical Disability Evaluation System.

Further, the Army contends that Layman has failed to establish an exception to the exhaustion

requirement.  However, in the event the court finds that an exception to the exhaustion requirement

is appropriate, the Army contends that the court should dismiss the case because Layman's claim

is non-justiciable.

In response, Layman first contends that he is not required to exhaust his administrative

remedies because the Army violated his constitutional rights, a federal statute, and military

regulations in denying his discharge.  Second, to the extent that exhaustion of remedies is required,

Layman argues that he pursued administrative relief with senior officers at the OSG.  Third, if the

court finds that exhaustion of remedies is required, Layman maintains that he qualifies for an

exception to the exhaustion requirements.  Finally,  Layman argues that his claim is justiciable even

though it involves internal military decisions.

IV.    Discussion

Federal courts restrict their review of military decision-making not because they lack

jurisdictional power to hear military disputes, but out of deference to the special function of the

military.  Rucker v. Secretary of the Army, 702 F.2d 966, 969 (11th Cir. 1983).   As such, military

disputes raise prudential considerations rather than jurisdictional questions.  Thus, federal courts are

reluctant to intervene in matters involving the military.   Chappell v. Wallace, 462 U.S. 296, 300

(1983)("Civilian courts must, at the very least, hesitate long before entertaining a suit which asks

the court to tamper with the established relationship between enlisted military personnel and their

superior officers; that relationship is at the heart of the necessarily unique structure of the Military

Establishment.")

　　　　To determine the reviewability of an internal military decision, binding precedent of the

Eleventh Circuit applies a multi-pronged test.  See Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971).[3]

Under this test, an internal military decision is unreviewable unless the plaintiff alleges: (a) a

violation of the Constitution, a federal statute or military regulation; and (b) exhaustion of available

intraservice remedies.  Id. at 201.  Even if plaintiff meets these two prerequisites, the court must

weigh four factors to determine whether review is appropriate: (1) the nature and strength of

plaintiff's claim; (2) the potential injury to plaintiff if review is denied; (3) the extent to which

review would potentially interfere with military functions; and (4) the extent to which military

discretion or expertise is involved.  Id. at 201-201.

　　　　In Winck v. England, 327 F.3d 1296, 1304 (11th Cir. 2003), the Eleventh Circuit held that

a service member must exhaust all intraservice administrative remedies before applying for a writ

of habeas corpus seeking discharge from the military under the terms of his or her enlistment

contract.   In Winck, the Navy asserted that the petitioner had to seek relief from the Board of

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September
30, 1981 are binding precedent in the  Eleventh Circuit.   See Bonner v. Prichard, 661 F.2d 1206
(11th Cir. 1981)(en banc).

Correction of Naval Records ("BCNR") or from his superior officer pursuant to Article 138 of the military code before seeking relief in district court.  Id. at 1299.  In reaching its decision, the Eleventh Circuit adopted the holding in  Woodrick v. Hungerford, 800 F.2d 1413, 1417 (5th Cir. 1986), cert. denied, 481 U.S. 1036 (1987), which applied the exhaustion requirement where a serviceman sought a rescission of his enlistment contract by means of habeas writ.  However, the Eleventh Circuit noted that:

> Although the court in Woodrick expressly relied on Mindes . . . we do not.  The Mindes test originally developed from claims in which service members objected to military discharge or other personnel action, and has generally not been applied in habeas cases, and in fact, has eroded over time.

Id. at 1303.    Notwithstanding this statement, the court nevertheless  required the petitioner to exhaust his administrative remedies and held that "the unflagging strength of principles of comity and judicial noninterference with, and respect for, military operations that informed the Mindes doctrine" required the petitioner to exhaust his intramilitary remedies.  Id. at 1304.[4]

The Eleventh Circuit emphasized the court's reluctance to review military decisions when there are available procedures to rectify an alleged error.  Id.. at 1301, citing Gusik v. Schilder, 340 U.S. 128, 132 (1950)(if an available remedy is available within military system, any interference by court may be wholly needless).  Furthermore, the strict application of the exhaustion requirement: (1) serves to maintain the balance between military authority and the power of the federal courts and (2) allows military to exercise its expertise and discretion prior to any court review.  Winck, 327

---

[4]  In any event, the Eleventh Circuit has expressly declined to apply the Mindes test for claims brought by members of the armed services based on an injury incident to service.  See e.g., Speigner v. Alexander, 248 F.3d 1292, 1295 n.5 (11th Cir. 2001) (citations omitted) cert. denied, 534 U.S. 1056 (2001).  However, that is not the case here.  Layman does not claim a service connected injury.

F.3d at 1303.  Excusing the exhaustion requirement would only encourage future litigants to flaunt the military process and send a signal that the federal courts are not serious about the military's integrity or autonomy.  Id. at 1304.

Exhaustion is excused where no genuine opportunity for adequate relief exists, irreparable harm will result if the petitioner is compelled to pursue administrative remedies, or an administrative appeal would be futile.  Id. at 1304-05.   Petitioner has the burden of proof to demonstrate that an exception to the exhaustion requirement applies.  Id. at 1304.

Thus, the court must determine whether Layman has alleged a violation of the Constitution, a statute or regulations.   Pursuant to the holdings in Mindes and Winck, the court must decide if Layman has exhausted his administrative remedies or if Layman is excused from exhausting intramilitary remedies.

A.   Allegations of Violation of Constitution, statute or regulation

Layman's habeas petition contains three counts: Count I alleges a violation of a federal statute (10 U.S.C. §12301(h)(1)) alleging the Army has violated that statute by calling him up for active duty without his consent; Count II alleges a violation of Army Regulation 40-501 and due process regarding fitness for duty; and Count III alleges a violation of Army Regulation 135-133, Chapter 2-7 and due process in connection with Layman's request for discharge based on hardship and dependency.  (Dkt. 31)

At oral argument, however, Layman's counsel conceded that the due process claim in Count III  - asserting that the Army failed to notify Layman of the reasons for the denial of his discharge application - was moot inasmuch as Layman later obtained a copy of Cook's January 12, 2006

memorandum recommending disapproval of Layman's hardship discharge request.[5]

B.   Exhaustion Requirement

Layman argues that the exhaustion of administrative remedies is not required and that Winck is limited to situations where a petitioner seeks a discharge based upon the terms of his enlistment contract.  Because Layman is alleging statutory and regulatory violations, he asserts that Winck is not controlling and therefore, he is under no obligation to exhaust his administrative remedies.  The court does not believe Winck to be so limited.[6]

1.   Intramilitary Remedy to Challenge Hardship Request

The Army asserts that Layman has failed to exhaust his administrative remedies because Layman may appeal the denial of his request for hardship discharge to the ABCMR. The Army asserts that the ABCMR has the authority to correct Layman's record to indicate a hardship discharge if the Board feels that Layman has established by a preponderance of the evidence that such a correction to his record is appropriate.

Layman acknowledges that he has made no attempt to appeal the denial of his discharge request to the ABCMR.  Rather, Layman argues that, if exhaustion of administrative remedies is

---

[5] Cook's January 12, 2006 memorandum recommending disapproval of Layman's hardship discharge request is part of the administrative record in this case (AR 01).  According to this document, the Army denied Layman's request because the record showed that there were other family members available to care for the minor child.

[6] Winck did acknowledge a line of cases in the Eleventh Circuit reviewing statutory challenges by military personnel without requiring exhaustion of remedies.  Winck, 327 F.3d at 1303 n. 5.  However, at least two of those cases involved challenges under federal statutes reviewed by federal courts daily.  See Doe v. Garrett, 903 F.2d 1455 (11th Cir. 1990), cert. denied, 499 U.S. 904(1991) (the Rehabilitation Act) and Stinson v. Hornsby, 821 F.2d 1537 (11th Cir. 1987), cert. denied, 488 U.S. 959 (1988)(42 U.S.C. § 1983).  In contrast, this case involves a statute and regulations applicable only to military personnel.  Further, neither Doe nor Stinson apparently invoked the court's habeas jurisdiction.

required, he qualifies for an exception to the exhaustion requirement.

First, Layman asserts that exhaustion of remedies to the ABCMR is excused because the Board cannot provide the injunctive relief he seeks:  the Board cannot order the Army to discharge him and the Board cannot stay the Army's order to report to duty.  Moreover, Layman states the ABCMR's authority is limited to correcting records that are erroneous or unjust.  Layman maintains that his records are correct, i.e., the OSG determined that he is medically disqualified for active duty. Given these circumstances, Layman contends he is eligible for an exception to the exhaustion requirement.

This argument is unpersuasive.  Pursuant to 10 U.S.C. § 1552, the ABCMR has the authority to afford relief to Army members injured by adverse personnel decisions, including but not limited to reversing involuntary separations, removing adverse information from personnel files and awarding back pay and allowances.  The ABCMR may review claims based upon a "constitutional, statutory and/or regulatory violation."  32 C.F.R. § 581.3(c)(v).  The purpose of the ABCMR is to consider all applications to determine the existence of an error or injustice in military records and to make recommendations for corrections, if warranted, to the Secretary of the Army.  32 C.F.R. § 581.3(a).  Upon receiving the recommendation of the Board, the Secretary of the Army will direct such action as he deems appropriate.   32 C.F.R. § 581.3(g)(3).

Thus,  if Layman's asserted claims of hardship and dependency are proven,  the ABCMR may correct the Army's decision to deny Layman's request for a discharge.  See Kennedy v. Secretary of the Army, 1999 U.S. App. LEXIS 22241 at *5 (9th Cir. Sept. 10, 1999).  Although the Board may not be able to order Layman's discharge, this does not excuse the requirement to exhaust administrative remedies before seeking judicial review.  See Von Hoffburg v. Alexander, 615 F.2d

10

633, 641 (5th Cir. 1980)(the Army Board for Correction of Military Records' inability to grant a plaintiff full relief is not a controlling factor in determining whether the plaintiff is required to resort to administrative remedies before seeking judicial relief)  Indeed, the Secretary may adopt the Board's recommendation and grant Layman's request for a discharge.  Also, the decisions of the ABCMR and the Secretary are reviewable in district court under an arbitrary and capricious standard.  Chappell, 462 U.S. at 299.   If Layman receives an unfavorable decision from the Board and/or Secretary, he may seek review in federal court.  Therefore, an appeal to the ABCMR provides Layman with adequate relief.

Second, Layman argues that he should be excused from exhausting his administrative remedies because an appeal to the ABCMR will result in irreparable harm.  (Dkt. 37 at 12)  Layman notes it may take the ABCMR approximately eight to ten months to issue a recommendation on his discharge  request.  Layman states that he will not receive a determination from the Board before his activation and deployment.  He asserts that the orders to report to active duty, possibly to Korea, as an ultimate post of duty have traumatized him.  (Dkt. 37 at 22)    Layman alleges that the separation from his wife at a time when they are struggling to cope with new responsibilities as custodians of a minor child will increase his stress level significantly.   He asserts that his deployment  would create a dangerous situation for himself and his family.  (Id. at 23)

The Army notes that if Layman had applied to the ABCMR after the denial of his resignation request on May 16, 2006, the Board would have had a period of approximately eight months to act on his claim.  The Army asserts that Layman's dilatory actions should not excuse the requirement to exhaust administrative remedies.   This court agrees.

Irreparable harm is measured as of the time intramilitary remedies must be sought, not at the

time of the petition is filed with court.  _Winck_, 327 F.3d at 1305.  If Layman had applied earlier to

the ABCMR, the Board might have acted on his request prior to his report date.  See also _Adkins_

_v. United States Navy_, 507 F. Supp.  891, 899 (S.D. Tex. 1981) (a member of the military cannot

complain that administrative process is too slow if his own actions perpetrated the delay).

Accordingly, the fact that Layman may suffer some inconvenience before the ABCMR reaches a

final administrative determination does not constitute grounds to excuse the exhaustion requirement.

Furthermore, military deployment does not necessarily entail irreparable harm, even if the

deployment is to a volatile region.  _Winck_, 327 F.3d at 1305 n.9.

Third, Layman argues his appeal to the ABCMR would be futile. (Dkt. 37 at 11) According

to Layman, even if the Board granted his application, the Secretary of the Army is under no

obligation to follow the recommendation of the ABCMR.  Layman notes that the Secretary of the

Army has the discretion to reject the ABCMR's recommendation.  As such, Layman contends that

an appeal to the ABCMR is futile and he should be exempted from pursuing his administrative

remedies.

This argument was summarily rejected by the court in _Winck_.  The court held:

> [T]o base an exception to the exhaustion requirement on the fact that
> the final administrative decision is subject to the discretionary power
> of the Secretary would in effect turn the exhaustion doctrine on its
> head.  Exhaustion is required in part because of the possibility that
> administrative review might obviate the need for judicial review . . .
> . Appellant's futility reasoning would mean that exhaustion of
> intraservice remedies should always be excused.  The administrative
> remedy may offer cold comfort and small consolation, but it is surely
> beyond our authority to permit the exceptions to the exhaustion
> requirement to swallow the rule.

_Winck_, 327 F.2d at 1306; see _Hodges v. Callaway_, 499 F.2d 417, 422-24 (5th Cir. 1974).

Accordingly, Count III of the habeas petition should be dismissed on grounds of failure to exhaust

intramilitary remedies.

    2.  <u>Intramilitary Remedy to Challenge Request for  Medical Disability Discharge</u>

Counts I and II of the habeas petition relate to Layman's request to be discharged from the Army on medical grounds.  Layman argues that he exhausted his administrative remedies with senior officers at the OSG.  (Dkt. 37 at 13)   When the OSG determined that he was medically disqualified because of his mood disorder, Layman contends he should have been discharged from the Army.  Specifically, Layman asserts his medical fitness must be processed under Army Regulation 40-501, Chapter 9, because he is a member of the Army Reserve, who is not on active duty and whose medical condition was not incurred or aggravated during an active duty period. Because Layman has not applied to transfer to the Retired Reserve, has not requested active status duty, and has not requested a referral to a PEB for a determination of fitness, Layman contends the regulations require his discharge. Furthermore, Layman alleges that because his disability is not causally related to his service, he is ineligible for processing under the Army's disability evaluation system.  Finally, Layman contends the Army may not order him to report for a physical evaluation pursuant to 10 U.S.C. § 12301(h)(1).[7]

In contrast, the Army alleges that Layman has not satisfied the exhaustion requirement related to his disability discharge request.  The applicable directive and regulations presume that Layman is fit for duty.  To determine if Layman is unfit for duty, the Army contends that the applicable directive and regulations require that Layman be evaluated by the Army Physical

---

[7] This statute provides that, when authorized by the Secretary of Defense, the Secretary of a military department may, with the consent of the member, order a member of a reserve component to active duty to: (1) receive authorized medical care, (2) be medically evaluated for disability or other purposes, or (3) complete a required Department of Defense health care study which may include an associated medical evaluation of the member. 10 U.S.C. § 12301(h)(1).

13

Disability Evaluation System.  The Army also argues that Layman is not being ordered to report to duty pursuant to 10 U.S.C. § 12301, but rather he is ordered to report for duty under the terms of his contract.  Once Layman reports to duty, the Army states that he will be processed through established medical channels to determine if there are sufficient grounds for a medical discharge.

The court must accord deference to a federal agency's reasonable interpretation of its own regulations.  Auer v. Robbins, 519 U.S. 452, 461 (1997).   Layman has failed to exhaust his administrative remedies because the directive and regulations require a physical examination to determine unfitness.

The applicable Army directive and regulation establish a procedure to determine whether a soldier is unfit because of a physical disability.  Department of Defense Directive ("DODD") 1332.18; Army Regulation 635-40.  DOD Directive 1332.18 establishes the policy for processing Active and Reserve component members who have conditions that are cause for referral for physical disability evaluation.  DODD 1332.18, 1.4.  This directive authorizes procedures under Department of Defense Instruction ("DODI")1332.38 for the DOD Disability Evaluation System ("DES").[8]  Id. at 1.3.

The DES is the mechanism for implementing retirement or separation because of physical disability.  Id. at 3.1.  The sole standard to be used in making determinations of unfitness due to physical disability shall be unfitness to perform the duties of the member's office, grade, rank or

---

[8]  The Army contends that Department of Defense directives are controlling over the Department of Defense instructions and Army regulations.  Since DODD 1332.38 authorizes the procedures for the instructions set forth in DODI 1332.28 regarding the disability evaluation system, this contention has merit.  Moreover, Layman does not cite to any authority contradicting the Army's position.

rating because of disease or injury.  Id. at 3.3.   Any member of the Ready Reserve who is pending separation for a non-duty related impairment or condition shall be afforded the opportunity to enter the DES for a determination of fitness.  Id. at 3.5.

The regulations also require a PEB to determine if Layman is unfit for duty.  Army Regulation 635-40 establishes the Army Physical Evaluation System according to the provisions of Title 10, Chapter 61 and DODD 1332.18.  Army Regulation 635-40, Chapter 1-1.  This regulation "sets forth policies, responsibilities, and procedures that apply in determining whether a Soldier is unfit because of physical disability to reasonably perform the duties of his or her office, grade, rank or rating.  If a Soldier is found unfit because of physical disability, this regulation provides for disposition of the Soldier according to the applicable laws and regulations."  Id.

"The mere presence of an impairment does not, of itself, justify a finding of unfitness because of physical disability."  Id. at Chapter 3-1.  After enlistment or appointment into the Army, "the fact that the Soldier may later fall below initial entry physical standards does not, in itself, authorize separation or retirement unless it is also established that the Soldier is unfit because of physical disability."  Id. Chapter 3-1d.

A PEB is a fact finding Board responsible for: (1) investigating the nature, cause, degree of severity and probable permanency of the disability of soldiers whose cases are referred to the PEB; (2) evaluating the physical condition of the soldier against the physical requirements of the soldier's duty; (3) providing a full and fair hearing; and (4) making findings and recommendations to establish the eligibility of a soldier to be separated ore retired because of physical disability.  Id. Chapter 4-17(a)(1)-(4).  The most important task of the PEB is to determine whether the soldier is "fit or unfit to perform his duties of the Soldier's office, grade, rank, or rating."  Id. at Chapter 4-

19(d)(1).  Thus, in order to determine whether Layman is unfit for duty and whether he should be discharge because of a physical disability, Layman must be evaluated by a PEB.[9]

The court also questions Layman's argument that the Army is violating 10 U.S.C. § 12301(h)(1) by requiring him to report to duty.  In February 2004, Layman requested that he be processed through a MEB and PEB prior to the publication of any active duty orders.  In 2005, the Army directed Layman to report to duty and advised him that he would be evaluated by a military physician to determine whether he was fit for military service.  If found unfit, Layman would be processed through the Army Disability Evaluation System. Subsequently, the Army rescinded the order to report to duty because of Layman's lack of consent to undergo a medical evaluation.  In May 2006, pursuant to the terms of his contract, the Army ordered Layman to active duty for a period of six years.  Thus it appears that the Army is ordering Layman to report to duty in January 2007 pursuant to the terms of his contract, rather than pursuant to 10 U.S.C. § 12301(h)(1).

Thus, Layman has failed to exhaust intramilitary remedies as to his request for a medical disability discharge because he has not undergone an evaluation by the Army Physical Disability Evaluation System.[10]  He will have that opportunity once he reports for active duty.

---

[9]   In addition, the court questions Layman's argument that Army Regulation 40-501 mandates his discharge.  Army Regulation 40-501 establishes the medical fitness standards for the retention, separation and retirement of Army Reserve officers.  First, it does not apply to officers seeking discharge. (See Dkt. 33-6 at 105).  Second, this regulation does not mandate Layman's discharge because Layman has not been determined unfit at this point.  Significantly, the OSG's finding that Layman was "medically disqualified" does not constitute a determination that he was "unfit" pursuant to the applicable directive or regulation.   Indeed, Layman concedes that the term "medically disqualified" and "unfit" are different terms.  (Dkt. 37 at 15)

[10]   Coots' determination in 2004 that Layman was not qualified for active duty or retention in the Army Reserves  was based solely on Layman's medical records; no physical examination was conducted.   (Dkt. 33, Ex. 10)  Although Coots' declaration is arguably more appropriate for summary judgment purposes,  there appears to be no dispute that  Coots' determination was based

For the reasons previously stated, Layman has not shown that exhaustion of his intramilitary remedy to obtain a discharge on medical grounds should be excused on the grounds of hardship, futility, or for any other reason.

Accordingly, the court should find that Counts I and II  should be dismissed without prejudice for failure to exhaust available intramilitary remedies.

D.    Justiciability

If the court were to conclude that Layman had fully exhausted his military remedies or  had shown that an exception to the exhaustion requirement applies, then it must be determined whether the other Mindes factors warrant review of his claims in this court. See  Winck, 327 F.3d at 1303 n. 4.  While recommending dismissal for failure to exhaust, this court concludes, in the alternative, that his claims should not be reviewed by this court.

As discussed supra, based on the present record, Layman has failed to make a strong claim of a constitutional violation or a violation of a  federal statute, or military regulation.  Thus, the first Mindes factor - the nature and strength of Layman's claim - does not weigh in favor of petitioner.

Next, in determining the potential injury to petitioner if review is refused, the second Mindes factor, this court is not unmindful of the allegations by Layman that a failure to address his claims could lead to a serious disruption of his medical regime as well as his family and personal life.  Layman asserts that if ordered to report to active duty in 2007, he will suffer increased stress which could adversely impact his family and himself.  In addition to the authorities previously cited,

---

solely on a review of  Layman's medical records, not a medical examination.   In fact, Layman's petition states that his medical records were referred to the OSG for evaluation.  (Dkt. 31 at 15, ¶ 93)

because hardships are inherent in the military service, especially hardship duty overseas, this type of hardship is not the type of harm a court will consider in a claim incident to military service. Diekan v. Stone, 1992 U.S. Dist. LEXIS 19272 at *15 n. 15 (D. Mass. Dec. 4, 1992), aff'd , 995 F.2d 1061 (1st Cir. 1993)(although transfer to Korea would result in separation from loved ones, it did not constitute potential injury contemplated under the Mindes test).    At the same time, one might distinguish Layman's case on the grounds that he is asserting that he is not fit for duty due to a serious mental disorder.  Additionally, in Winck, the court noted that the Navy in that case had agreed to maintain the status quo of the petitioner's inactive status and to expedite his claims.  327 F.2d at 1305.  While it is troubling in this case that the Army has advanced Layman's reporting date from April 2007 to January 1, 2007 - indeed, after oral argument in this case - the court must be cautious about making a finding of irreparable harm where the basis for the alleged harm is a military deployment order.  See Id. at n.9.[11]  On balance, the  second Mindes factor does not weigh in favor of court review although petitioner's showing on this factor is stronger than as to the other three factors.

However, the third and fourth Mindes  factors militate strongly against granting review. "[I]nterference with military functions should only be done sparingly and only in exceptional circumstances."  Pickett v. Ariz.  Dep't of Emergency and Military Affairs, 2006 U.S. Dist. LEXIS 1486 at *5-6 (D. Ariz. Jan. 12, 2006).  If review were granted in this case, the court would have to involve itself in issues closely intertwined with military functions and discretion, something courts have been reluctant to undertake in the past.

---

[11]   On the other hand, it is noted that Layman's recently filed motion for preliminary injunctive relief states that he does work part-time, albeit in a supported environment.  (Dkt. 47 at 16)

18

In <u>Hamon v. Harvey</u>, 2006 U.S. Dist. LEXIS 59802 at *18-19 (N.D. Cal. Aug. 15, 2006), an Army Reserve physician filed a petition for writ of habeas corpus alleging that the Army had improperly denied his request for resignation based upon extreme compassionate circumstances and hardship.  The court declined to review the claim because the third and fourth factors of the <u>Mindes</u> test prohibited the court from interfering with military decisions addressing requests for discharge and resignation.  <u>Id</u>.  Likewise, in <u>Pickett</u>,  a National Guard member challenged the Army's denial of his transfer and resignation.  <u>Pickett</u>, 2006 U.S. Dist. LEXIS 1486 at * 5-6.   The court refused to consider his claim concluding that such a review would involve upon the military decision making regarding deployment of troops and overall strategies of preparedness.  <u>Id</u>.

Here, Layman seeks a ruling by this court that he should be discharged from his service in the Army Reserves on hardship or unfitness for duty grounds.  Matters such as this have traditionally been entrusted solely to the military.  <u>See</u> <u>e.g.</u> <u>Speigner</u>,  248 F.3d at 1298 (civilian courts have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions); <u>Rucker</u>, 702 F.2d at 971(judicial review of the ultimate disposition of soldier's case, <u>i.e.</u>, discharge or retention, was not available).  Therefore, consideration of all four <u>Mindes</u> factors, in the alternative, would counsel against review of the merits of Layman's claims assuming that the exhaustion requirement had been met.

<u>CONCLUSION</u>

Because Layman has not established that he has exhausted his available intramilitary remedies, and that no exceptions apply, the petition must be dismissed without prejudice.  <u>Winck</u>, 327 F.3d. at 1306.  In the alternative, Layman has not demonstrated that his case falls within the prudential concerns which must be present to justify court review of the merits of his claims against

19

the Army.  It is therefore **RECOMMENDED** that:

> (1)      **Respondent's Refiled Motion to Dismiss** (Dkt. 33)  be **GRANTED** and that the
>
> petition be dismissed without prejudice for failure to exhaust intramilitary remedies;
>
> and that the summary judgment motion be denied as **MOOT**.


_____
ELIZABETH A JENKINS
United States Magistrate Judge


Dated: December 22, 2006

Case No. 8:05-CV-2208-T-24EAJ


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of this service shall bar an aggrieved party from

attacking the factual findings on appeal.  See 28 U.S.C. 636 (b)(1).